KRUSINSKI CONSTRUCTION COMPANY, Plaintiff and Counterdefendant-Appellee, v. NORTHBROOK PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant (American Country Insurance Company, Defendant and Counterdefendant-Appellee).

First District (1st Division) No. 1—00—2857

Opinion filed November 13, 2001.—Rehearing denied December 11, 2001.

Steven G. M. Stein and Jeffrey H. Winick, both of Stein, Ray & Harris, of Chicago, for appellees.

Rory T. Dunne and Daniel C. McCabe, both of Karbal, Cohen, Economou & Dunne, and Kiesler & Berman (John J. Piegore and John A. Husmann, of counsel), both of Chicago, for appellant.

JUSTICE COUSINS delivered the opinion of the court:

In November 1994, Krusinski Construction Company (Krusinski) was named the general contractor for the construction of approximately 300,000 square feet of office and warehouse space in Buffalo Grove, Illinois, for Courtesy Corporation (Courtesy). Krusinski hired eight subcontractors to perform the construction services. In 1997, a dispute arose between Krusinski and Courtesy. Krusinski filed a demand for arbitration. Courtesy filed a counterclaim against Krusinski alleging that the eight subcontractors performed defective construction services. Krusinski tendered its defense and indemnification to its commercial general liability insurer, Northbrook Property & Casualty Insurance Company (Northbrook), and the subcontractors' insurers. Each of the insurers denied coverage.

Krusinski sought a declaratory judgment finding that the subcontractors' respective insurers had a duty to defend and indemnify it as to any liability it may incur in the underlying Courtesy arbitration.

In a March 13, 2000, order, the trial court held that Northbrook was responsible for seven of the eight claims against Krusinski and that American Country Insurance Company (American Country) was responsible for one of the eight claims against Krusinski. Northbrook filed a motion to reconsider on April 12, 2000. On July 12, 2000, the trial court allowed Northbrook to file a second amended complaint *instanter*. The trial court denied Northbrook's motion to reconsider and entered judgment in favor of American Country on counts II and III of the second amended complaint. Northbrook now presents the following issue upon appeal: whether Northbrook has a duty to defend Krusinski relative to seven of the eight claims brought by Courtesy in the underlying arbitration.

## BACKGROUND

In November 1994, Krusinski was named the general contractor for the Courtesy office and warehouse project, to be completed November 15, 1995. In order to complete the project, Krusinski secured contracts with eight subcontractors: Binzel Industries, Inc. (Binzel); Kole Construction Company, Inc. (Kole); Sellergren Brothers (Sellergren); Chicago Heights Glass, Inc. (Chicago Heights Glass);

Haley Floor & Wall Design, Inc. (Haley); O'Hare Engineering, Inc. (O'Hare); Century Concrete Construction Company (Century); and Lenzini Excavating, Inc. (Lenzini). Article 13.6 of all of the subcontracts provided:

"THE SUBCONTRACTOR WILL NAME THE CONTRACTOR, OWNER, ARCHITECT AND ENGINEER AS ADDITIONAL INSUREDS TO THE COMPREHENSIVE GENERAL LIABILITY AND UMBRELLA POLICIES. The coverage afforded the Additional Insured under these policies shall be primary insurance. If the Additional Insured has other insurance which is applicable to the loss, such other insurance shall be on an excess or contingent basis."

General contractor Krusinski acquired commercial general liability insurance from Northbrook. The pertinent sections of Northbrook's policy provide:

"a. We [Northbrook] will pay those sums that the Insured [Krusinski] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any occurrence and settle any claim or suit that may result.

\* \* \*

b. This insurance applies to any bodily injury and property damage only if:

(1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

(2) The bodily injury or property damage occurs during the policy period.

\* \* \*

4. Other Insurance

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages A and B of this insurance, our obligations are limited as follows:

a. PRIMARY INSURANCE

This insurance is primary except when paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by method described in c. below.

b. EXCESS INSURANCE

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis;

(1) That is property insurance, such as, but not limited to Fire, Extended Coverage, Builder's Risk or Installation Risk Coverage applicable to your work;

\*\*\*

When this insurance is in excess, we will have no duty under Coverages A or B to defend any claim or suit that any other insurer has a duty to defend. When no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers."

Northbrook's "other insurance" clause, as amended by endorsement, provides:

"Commercial Liability Conditions is hereby amended to include the following:

b. EXCESS INSURANCE

4. In those instances where the named insured (you) under this policy is an additional insured on a policy issued by any other insurer, but only if this policy would have provided such coverage for the named insured (you)."

Subcontractor Lenzini secured an insurance policy with American Country. American Country's "Additional Insured" endorsement provides:

"WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy by:

1. An agreement, to which you are bound, executed prior to an 'occurrence' giving rise to 'bodily injury' or 'property damage' and;

2. A certificate of insurance designating that person or organization as an additional insured has been issued by our authorized producer prior to an 'occurrence' giving rise to 'bodily injury' or 'property damage.' \*\*\*

The insurance provided to the additional insured is limited as follows:

1. That person or organization is an additional insured but only with respect to your acts or omissions in connection with 'Your work' for that additional insured by you or on your behalf at the location designated in the agreement and designated in a certificate of insurance issued by our authorized producer.

\*\*\*

2. Additional Exclusions. This insurance does not apply to:

a. 'Bodily injury' or 'property damage' for which the additional insured(s) are obligated to pay damages by reason of the assumption of liability in a contract or agreement. \*\*\*

\* \* \*

Any coverage provided hereunder shall be excess over any other insurance, issued in favor of the additional insured whether primary, excess, contingent or any other basis, whether the additional insured can collect on it or not, unless a written agreement, to

which you are bound, specifically requires that this insurance be primary or the certificate of insurance on file with the company showing the person or organization as an additional insured states the insurance applies on a primary basis.

When this insurance is primary, it shall be contributory in accordance with the method of sharing as set forth in paragraph C of Condition 4, Other Insurance (Section IV). When this insurance is excess, we will pay only our share of the amount of the loss, if any that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance."

A dispute arose between Krusinski and Courtesy regarding alleged construction deficiencies. In July 1997, Courtesy filed a demand for arbitration. Krusinski filed for declaratory judgment to stay Courtesy's demand for arbitration. Krusinski's motion to stay was granted.

In May 1998, Krusinski filed an amended demand for arbitration against Courtesy and all eight subcontractors. Courtesy filed a counterclaim against Krusinski in July 1998. Courtesy's counterclaim against Krusinski asserted that Courtesy was not able to occupy the project site until after the completion date and "many aspects of the Work performed by Krusinski were defective and/or not in conformance with the Contract." The alleged defective or nonconforming work included the following:

"1. *** The risers within [the 'monumental staircase'] at various locations vary beyond the Contract specifications as well as industry standards.

2. The stone floor in the entrance lobby at the Project site has significant out of level conditions ***.
* * *
8. Courtesy suffered significant damages *** when *** Lenzini Excavating [ ] severed a power line ***."

Courtesy requested compensation for the defective and nonconforming work, the costs to correct the same, and loss of business and profits.

In August 1998, Krusinski tendered the Courtesy counterclaim to seven of the eight subcontractors' insurers, excluding Lenzini's insurer, for defense and indemnity. Each of the insurers denied coverage.

In January 1999, Krusinski filed a complaint for declaratory judgment against St. Paul Insurance Company (St. Paul) and all eight subcontractors and their insurers to defend and indemnify it against the Courtesy claims. Krusinski amended its complaint and substituted Northbrook for St. Paul as the insurer obliged to defend and indemnify Krusinski in Courtesy's underlying counterclaim for arbitration.

In April 1999, Northbrook filed its answer, affirmative defenses and original counterclaim. In its August 1999 amended counterclaim, Northbrook asserted that there was no coverage for Krusinski relative to the Courtesy claims under the Northbrook policies, Northbrook was not obligated to defend or indemnify Krusinski, and the Northbrook policies were excess policies to other insurance provided to Krusinski.

In June 1999, Krusinski filed a motion for summary judgment against Northbrook and all eight subcontractors and a separate motion against each of the subcontractors' insurers. Northbrook filed a cross-motion for summary judgment. Each of the insurers filed for summary judgment. In several orders entered in November and December 1999, the trial court granted summary judgment in favor of the insurers for Binzel, Century, O'Hare, Haley, Kole, Sellergren, and Chicago Heights. Relative to Courtesy's claim against Krusinski, whose insurer is Northbrook, the court found in its orders that the claims made by Courtesy against Krusinski in the Courtesy arbitration were for "breach of contract" and that the subcontractors' insurers had no obligation to defend or indemnify Krusinski in the underlying Courtesy arbitration. In these orders, the court found: there was no coverage for Krusinski provided under policies issued by these seven subcontractors as the claims made by Courtesy in the underlying arbitration proceedings "do not allege an 'occurrence' or 'property damage.' "

On December 6, 1999, Krusinski filed a notice of appeal from the summary judgment orders in favor of the seven insurers. That appeal was not pursued, and on April 26, 2000, Krusinski's appeal was dismissed.

On December 1, 1999, the trial court granted Krusinski's motion for partial summary judgment, in part, and denied American Country's cross-motion finding that Courtesy's underlying amended counterclaim alleged an occurrence of property damage under the insurance policies of Northbrook and American Country. The court reserved its ruling on the issues of the duty to defend and the primary/excess insurer issue.

Following the December 1999 order, American Country filed a motion to apportion defense fees and asserted that it was entitled to an allocation of defense fees and costs pursuant to the underlying arbitration. Krusinski filed its response arguing that American Country's duty to defend all claims in the underlying counterdemand for arbitration was triggered by the claim arising out of Lenzini's work. At a hearing held on American Country's motion to apportion, the trial judge stated the following:

"The facts in this case appear to be unique. *** While, of course, there is no issue here that American Country's policy is primary in

regard to Linzini's [*sic*] claim, the hard part of this case, of course, comes about the remaining seven claims.

\* \* \*

*Among the allegations in the underlying counterclaim in the arbitration are that Krusinski didn't adequately supervise and prevent the misdeeds of the various subs.* That was really what the purpose of the insurance was.

In taking a look at it that way as opposed to just the general principles of law in a vacuum, I have decided to grant American Country's motion to apportionment. I am going to find that *American Country is primary and Northbrook is excess for the defense of the Linzini [sic] claim only, and that American Country is entitled to an allocation of defense fees and costs upon proof of fees and costs allocated to covered and noncovered claims.*" (Emphasis added.)

On March 13, 2000, the trial court entered the following order:

"1. American Country's Motion to Apportion is granted. The Court declares that the American Country policy is primary and the Northbrook policy is excess for the defense of Krusinski for the claim arising out of Lenzini's work. This Court finds and declares that American Country owes a defense to Krusinski only for the claim arising out of Lenzini's work. The Court further finds that American Country is entitled to allocation of defense fees and costs in the underlying arbitration based on actual proof of fees and costs allocated to covered and non-covered claims.

2. Northbrook's Cross-Motion for Summary Judgment is denied. The Court finds that Northbrook must defend the entirety of the remaining claims against Krusinski.

3. The Court further finds that American Country has waived, in open court and on the record, its reservation of rights pursuant to which it had offered a defense to Krusinski for the claim arising out of Lenzini's work. Therefore, there is no conflict of interest for defense counsel appointed by American Country to represent Krusinski for the claim arising out of Lenzini's work.

4. There is no just delay enforcement or appeal of this order."

On April 12, 2000, Northbrook filed a motion to reconsider the judgment order of March 13, 2000. Northbrook was granted leave to file its second amended counterclaim on July 12, 2000, arguing that under the Northbrook policy, there was no coverage for Krusinski with respect to the Courtesy claims; Northbrook was not obligated to defend or indemnify Krusinski against the Courtesy claims; the Northbrook policies are excess to other insurance provided to Krusinski; American Country should be liable to Krusinski for its defense costs in the Krusinski arbitration; any coverage provided by Northbrook's

policy is excess to the coverage provided by American Country; and to the extent Northbrook is forced to pay Krusinski's defense costs, Northbrook has a right to equitable indemnification and equitable contribution from American Country.

On July 12, 2000, the trial court entered an order which provided:
"1. Northbrook is allowed leave to file its second amended counter-complaint *instanter* adding Counts II & III against American Country Insurance Co.

2. The Court enters judgment on the pleadings in favor of American Country and against Northbrook on Counts II & III of the Second Amended Complaint.

3. Northbrook's motion to reconsider is denied in all other aspects and for all other relief sought."

Northbrook now appeals. We affirm.

## ANALYSIS

Northbrook contends that it has no duty to defend Krusinski relative to seven of the eight claims brought by Courtesy. In contrast, Krusinski asserts that Northbrook is obligated to defend it against the underlying Courtesy claims as its primary insurer. American Country asserts that the March 13, 2000, apportionment ruling should be affirmed and that the July 12, 2000, judgment in favor of it relative to the second amended countercomplaint should also be affirmed.

■ The review of an order granting summary judgment is de novo. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 374, 695 N.E.2d 853 (1998). The construction of the provisions of an insurance policy is also subject to de novo review. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80, 687 N.E.2d 72 (1997). Apportionment is an equity matter and, therefore, the standard of review is abuse of discretion. See *Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 742, 710 N.E.2d 132 (1999). In this case, we are reviewing the construction of insurance policies and the apportionment of insurer liability.

■ American Country argues that while Northbrook has standing to appeal the July 12, 2000, judgment against it and in favor of American Country on the second amended countercomplaint, it lacks standing to appeal the trial court's March 13, 2000, apportionment decision. American Country states that "[t]here was no counter-complaint pending between Northbrook and American Country on March 13, 2000, when the trial court entered the judgment on apportionment." Although the general rule in Illinois is that the only party who may appeal from a judgment in favor of a codefendant is the plaintiff, that rule is subject to the limitation that it applies only in cases where the rights of the appellant are not affected by the error. *St. Mary of Naz-*

*areth Hospital v. Kuczaj*, 174 Ill. App. 3d 268, 271, 528 N.E.2d 290 (1988). Northbrook's responsibilities as an insurer were directly adverse to those of American Country in the March 13, 2000, order on apportionment and the July 12, 2000, denial of Northbrook's motion to reconsider. Therefore, Northbrook has standing to appeal.

■ In construing the language of an insurance policy, the court's primary objective is to ascertain and give effect to the intent of the parties to the contract. *Koloms*, 177 Ill. 2d at 479. A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993). If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. *Koloms*, 177 Ill. 2d at 479. Provisions that limit or exclude coverage will be interpreted liberally in favor of the insured. *Koloms*, 177 Ill. 2d at 479.

■ The extent of an insurer's duty to defend is determined by a comparison of the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Koloms*, 177 Ill. 2d at 479. If the facts alleged in the complaint fall within, or potentially fall within, the language of the policy, the insurer's duty to defend arises. *Koloms*, 177 Ill. 2d at 479.

■ Illinois law is clear that primary and excess insurers insure different risks. *Schal Bovis, Inc. v. Casualty Insurance Co.*, 315 Ill. App. 3d 353, 732 N.E.2d 1179 (2000). Primary insurance is coverage whereby liability attaches immediately upon the happening of the occurrence that gives rise to liability. *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.*, 150 Ill. App. 3d 479, 483, 501 N.E.2d 817 (1986). Primary policies generally impose on the insurer a duty of defense separate from the duty to indemnify the insured against the claim. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 145 Ill. App. 3d 175, 201, 494 N.E.2d 634 (1986). Excess or secondary coverage liability attaches only after a predetermined amount of primary coverage has been exhausted. *Northbrook Property*, 150 Ill. App. 3d at 483. Rather than providing a duty to defend, most excess policies require the excess insurer to indemnify the insured for the costs of the defense as part of the "ultimate net loss" against which the policy insures. *Zurich*, 145 Ill. App. 3d at 201.

Northbrook cites *Schal Bovis* to support its contention that the subcontracts at issue in the instant case "are the very types of written agreements contemplated by American Country's 'Additional Insured' endorsement and, in fact, specifically require that the insurance provided by American Country be primary." In *Schal Bovis*, the

underlying litigation involved a worker's fall from a steel beam while working on a construction project. MKDG/Buck 123 Partnership (Buck) owned the site, and Schal Bovis, Inc. (Schal Bovis), was the general contractor. Both were insured by Northbrook Property & Casualty Company (Northbrook). *Schal Bovis*, 315 Ill. App. 3d at 358. Schal Bovis contracted with four subcontractors, Ozark Steel Fabricators, Inc., and Ozark Steel Sales, Inc. (collectively, Ozark), Ranken Steel, Inc., and R.S. Erectors, Inc. (collectively, Ranken), Alcan United Concrete, Inc. (Alcan), and Chicago Forming, Inc. (Chicago Forming), to complete the project. Buck and Schal Bovis were additional insureds on each of the subcontractors' insurance policies issued by Great American Insurance Company (Great American), Wausau Insurance Company (Wausau), Casualty Insurance Company (Casualty), and American States Insurance Company (American States).

The Northbrook policy in *Schal Bovis* contained an "other insurance" clause that stated that the coverage provided would be considered excess insurance, but only in the case where: (1) the other insurance was property insurance; (2) the other insurance was for fire, explosion, aircraft or vehicle insurance for premises rented to Schal; or (3) loss arose out of the maintenance or use of aircraft, autos or watercraft. *Schal Bovis*, 315 Ill. App. 3d at 361. However, Northbrook issued an endorsement to the policy that provided that the "other insurance" clause was amended to make the policy an excess policy "[i]n those instances where an Insured under [the] policy is an Additional Insured on a policy issued by any other insurer." *Schal Bovis*, 315 Ill. App. 3d at 361. Northbrook also executed a "Blanket Person Insured by Contract" endorsement providing that the "Persons Insured" provision would be amended to include any person or organization that the "Named Insured has agreed by contract, either oral or written, prior to loss, to include as an insured with respect to operations performed by, for, or on behalf of the Named Insured." *Schal Bovis*, 315 Ill. App. 3d at 361.

Schal Bovis and Buck tendered their defenses to Wausau, Great American, Casualty and American States. *Schal Bovis*, 315 Ill. App. 3d at 360. Wausau and Great American accepted the tender. Casualty participated in Schal Bovis' and Buck's defense, but withdrew when its named insured, Alcan, was dismissed from the suit. American States never participated in Schal Bovis' or Buck's defense. The jury returned a verdict in favor of the injured employee and assessed his recoverable damages in the amount of $2,892,500 against Schal Bovis, Buck and Ozark. *Schal Bovis*, 315 Ill. App. 3d at 360. The jury was not asked to apportion fault. *Schal Bovis*, 315 Ill. App. 3d at 360.

Northbrook brought alternative claims: (1) in its count seeking

reimbursement from Casualty and American States, Northbrook asserted that it was an excess insurer of Schal Bovis and Buck; and (2) in its count seeking equitable contribution, it asserted that it insured the "same risk" as the other insurers who were alleged to be primary carriers. *Schal Bovis*, 315 Ill. App. 3d at 360.

The appellate court wrote:

> "It is undisputed that Schal and Buck are insureds under the Northbrook policy, and it is also undisputed that Schal and Buck are additional insureds on each of the policies issued by Great American, Casualty, Wausau and American States. Therefore, by operation of the 'other insurance' endorsement, we find Northbrook to be an excess insurer relative to the other insurers in this case." *Schal Bovis*, 315 Ill. App. 3d at 362.

The appellate court reasoned that the endorsement which amended the "other insurance" clause was "clear and unambiguous and indicate[d] that Northbrook was intended to be an excess insurer whenever its insureds (Schal and Buck) were named as additional insureds on any policy issued by another carrier." *Schal Bovis*, 315 Ill. App. 3d at 361-62. However, *Schal Bovis* is inapposite because the underlying litigation in that case involved a single personal injury claim.

Northbrook also relies on *Missouri Pacific R.R. Co. v. International Insurance Co.*, 288 Ill. App. 3d 69, 679 N.E.2d 801 (1997). In *Missouri Pacific*, there was an insurance coverage dispute between Missouri Pacific Railroad Company and four of its excess general liability insurance carriers: Commercial Union Insurance Company, Federal Insurance Company, International Insurance Company, and Century Indemnity Company. *Missouri Pacific*, 288 Ill. App. 3d at 71. Thousands of current and former Missouri Pacific employees brought claims against Missouri Pacific seeking damages for hearing loss allegedly caused by continuous and repeated on-the-job exposure to unsafe noise levels. Also, hundreds of current and former employees sought damages for asbestos-related injuries allegedly caused by continuous and repeated exposure to unsafe levels of asbestos over the course of their employment. The trial court found as a matter of law that all of the hearing-loss claims arose from a single occurrence. *Missouri Pacific*, 288 Ill. App. 3d at 74. Also, the trial court held that all of the asbestos claims arose from a single occurrence. *Missouri Pacific*, 288 Ill. App. 3d at 74. Importantly, unlike the instant case, *Missouri Pacific* involved "a single continuous occurrence." *Missouri Pacific*, 288 Ill. App. 3d at 78.

Another case that Northbrook cites is *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 355 N.E.2d 24 (1976). In *Maryland Casualty*,

James Mims filed a personal injury action because he had been shot by Robert Peppers while he was fleeing the pizza parlor owned by Peppers. There was no policy of insurance on the pizza parlor covering liability for personal injuries. Adjacent to the pizza parlor was a building which was insured by Maryland Casualty Company (Maryland Casualty) under a general liability policy. Next to that building was the Peppers home, which was insured by St. Paul Fire & Marine Insurance Company (St. Paul) under a homeowner's policy of insurance. *Maryland Casualty*, 64 Ill. 2d at 191. The policies issued by Maryland and by St. Paul both specifically excluded coverage for injuries intentionally inflicted. *Maryland Casualty*, 64 Ill. 2d at 190. The policy issued by Maryland Casualty was limited by its terms to pay on behalf of Peppers and his wife all sums which they became legally obligated to pay for bodily injury or property damage caused by an occurrence and arising out of the ownership, maintenance, or the use of the insured premises. *Maryland Casualty*, 64 Ill. 2d at 192-93.

The trial court held that the Maryland Casualty policy issued to Peppers did not cover the occurrence in question. *Maryland Casualty*, 64 Ill. 2d at 193. However, the trial court held that St. Paul was obligated under its policy to defend Peppers. *Maryland Casualty*, 64 Ill. 2d at 193. The appellate court modified and affirmed. The Illinois Supreme Court agreed. *Maryland Casualty*, 64 Ill. 2d at 199. The supreme court reasoned that the controlling question as to Maryland's coverage and duty to defend involved the location of the occurrence. *Maryland Casualty*, 64 Ill. 2d at 192.

The supreme court wrote:

"In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established. [Citations.]

This duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be." *Maryland Casualty*, 64 Ill. 2d at 193-94.

However, *Maryland Casualty* is also inapposite because, unlike the instant case, that case involved a single occurrence by a single actor. Here, we have acts of alleged nonconformance by seven different subcontractors that are unrelated to each other and unrelated to the previously resolved Lenzini action.

■ In the instant case, Krusinski had a responsibility for the work performed by its subcontractors. Northbrook's policy insuring Krusin-

ski is a comprehensive general liability policy. Northbrook's policy states that it "will pay those sums that the Insured [Krusinski] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." This insurance applies to any bodily injury and property damage if: "(1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and (2) The bodily injury or property damage occurs during the policy period." The pertinent amendment to the Northbrook policy states that where the named insured, Krusinski, is an additional insured on a policy by another company, the Northbrook policy is excess insurance, but only if Northbrook would have provided coverage for the claim.

In contradistinction to the other claims, the Lenzini claim involved property damage for which Lenzini's insurer, American Country, became the primary insurer and Northbrook became the excess insurer. Courtesy's remaining claims against Krusinski were for "breach of contract" by seven different companies. Where the facts alleged in the complaint fall within, or potentially fall within, the language of the policy, the insurer's duty to defend arises. *Koloms*, 177 Ill. 2d at 479. In our view, Krusinski, as general contractor, is potentially responsible for defective work performed by all subcontractors. However, the facts alleged in the complaint, except for one property damage occurrence, do not fall within or potentially fall within Lenzini's policy with American Country. Provisions that limit or exclude coverage will be interpreted liberally in favor of the insured (*Koloms*, 177 Ill. 2d at 479), and, therefore, on the facts of the instant case, we hold that the trial court did not err in finding that Northbrook had a duty to defend Krusinski in the remaining Courtesy claims.

Relative to the duty to defend claims in an underlying action that are not potentially covered by an insured's policy, *Buss v. Superior Court*, 16 Cal. 4th 35, 939 P.2d 766, 65 Cal. Rptr. 2d 366 (1997), is instructive. In *Buss*, H&H Sports, Incorporated (H&H Sports), brought an action against Jerry H. Buss and others alleging 27 causes of action including breach of contract, defamation, specific performance, and conversion. *Buss*, 16 Cal. 4th at 40-41, 939 P.2d at 769, 65 Cal. Rptr. 2d at 369. Buss tendered the H&H Sports action to his insurers. With the exception of Transamerica Insurance Company (Transamerica), each refused, denying coverage. *Buss*, 16 Cal. 4th at 41, 939 P.2d at 769, 65 Cal. Rptr. 2d at 369.

Out of the 27 causes of action in the final amended form of the complaint, there was a single one for defamation against Buss. *Buss*, 16 Cal. 4th at 42, 939 P.2d at 770, 65 Cal. Rptr. 2d at 370. In light of

the allegations, Transamerica agreed to defend Buss in only the defamation cause of action. *Buss*, 16 Cal. 4th at 42, 939 P.2d at 770, 65 Cal. Rptr. 2d at 370. Buss and Transamerica entered into an agreement that provided that if a court ordered defense costs to be shared *pro rata* by Buss and Transamerica, Buss shall reimburse Transamerica for the appropriate *pro rata* share of the fees and costs paid to that date. *Buss*, 16 Cal. 4th at 42, 939 P.2d at 770, 65 Cal. Rptr. 2d at 370. Subsequently, Buss settled the H&H Sports action paying H&H Sports $8.5 million. *Buss*, 16 Cal. 4th at 42, 939 P.2d at 770, 65 Cal. Rptr. 2d at 370. Transamerica paid Buss' independent counsel a sum equaling the cost of defending the defamation cause of action.

In *Buss*, the court wrote, in pertinent part:

"It follows that, *in a 'mixed' action,* in which some of the claims are at least potentially covered and the others are not, *the insurer has a duty to defend as to the claims that are at least potentially covered,* having been paid premiums by the insured therefor, *but does not have a duty to defend as to those that are not,* having not been paid therefor." (Emphasis added.) *Buss*, 16 Cal. 4th at 47-48, 939 P.2d at 774, 65 Cal. Rptr. 2d at 374.

In *Buss*, the court held that the insurer may seek reimbursement for the defense costs that can be allocated solely to claims that are not even potentially covered. *Buss*, 16 Cal. 4th at 50, 939 P.2d at 776, 65 Cal. Rptr. 2d at 376.

Finally, Northbrook asserts that if it is determined to have a duty to defend Krusinski, it is entitled to reimbursement from American Country. We disagree. Northbrook has not yet paid the expenses for Krusinski's defense, and based upon our holding, Northbrook will not become entitled to reimbursement from American Country.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

COHEN, P.J., and McNULTY, J., concur.