# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2453

UTILITY AUDIT, INC.,

*Plaintiff-Appellant,*

v.

HORACE MANN SERVICE CORPORATION,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Central District of Illinois
No. 01-3386—**Richard Mills**, *Judge.*

———————

ARGUED JANUARY 16, 2004—DECIDED SEPTEMBER 13, 2004

———————

Before FLAUM, *Chief Judge*, and RIPPLE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Horace Mann Service Corporation wanted to save money on its telephone bills. To that end, it hired Utility Audit, Inc. in January 2000 to review past bills for possible overbilling and to recommend ways of saving money in the future. In exchange, Horace Mann agreed to pay to Utility Audit a percentage of any savings realized. But Horace Mann refused to pay Utility Audit any part of the $1.2 million it stood to save after switching long-distance carriers, a move Utility Audit takes credit for recommending. Utility Audit sued, but the district court granted

summary judgment to Horace Mann, concluding that under the terms of the parties' contract, Utility Audit was not entitled to any of the savings that resulted from the switch in carriers. The court also denied Utility Audit's attempt to amend its complaint to add a claim of unjust enrichment. We affirm.

## I. BACKGROUND

The parties' contract required Utility Audit to review the past five years of bills Horace Mann received from MCI for local and long distance telephone service. If Utility Audit's review resulted in a refund or credit, then Horace Mann was required to pay 43% of the refund or credit to Utility Audit. In addition, the contract required Utility Audit to "monitor" the bills Horace Mann would receive from MCI over the coming 12 months to identify any possible future savings. Specifically, the contract stated that:

> [Horace Mann] retains Utility Audit Inc., to monitor all MCI Long Distance, Long Distance and Local Exchange Carrier(s) and/or all Phone related service bills for the period going forward for 12 months, beginning on the date [Horace Mann] implements audit savings. Utility Audit Inc. will ensure refunds/credits and/or savings are realized and/or obtained by [Horace Mann].

> [Horace Mann] understands that Utility Audit Inc. will receive 40% of any future savings on a telecommunication bill for a period of One Year.

But under the terms of the contract, Horace Mann retained the right to "choose not to implement a Utility Audit Inc. recommendation," in which case "there is no charge for future savings."

Over the next few months Utility Audit submitted a number of reports to Horace Mann. In the first, Utility Audit

advised Horace Mann that its current contract with MCI was "inferior," but that Utility Audit was "very confident" it could obtain a better proposal from MCI before the contract expired on November 30, 2000. The report also advised Horace Mann to obtain pricing proposals from the other "most capable carriers today," specifically Qwest, Claricom, AT&T, McLeod USA, and Sprint.

A couple of weeks later, Utility Audit submitted to Horace Mann a second report, this one entitled "Home Office Report." In it, Utility Audit again recommended that Horace Mann renew its contract with MCI before it expired in November, although Utility Audit had not yet obtained better rates from MCI. In a third report submitted in April—entitled "New Long Distance Pricing Home Office Report"—Utility Audit provided Horace Mann with rate proposals from Qwest, Claricom (aka Staples), MCI, and AT&T. Based upon the new proposals, Utility Audit estimated in a fourth report that Horace Mann stood to save the following amounts each year over its current contract with MCI:

| Qwest | $712,856.37 |
| Staples | $672,805.35 |
| MCI | $653,876.44 |
| AT&T | $418,198.91 |

Despite other carriers' cheaper rates, Utility Audit "strongly recommend[ed] that [Horace Mann] accept MCIWorldcom's current proposal," and "strongly advise[d] against switching to another carrier" because of the reliability of MCI's service. However, Utility Audit advised, if Horace Mann wanted to switch carriers, it should choose either Qwest or Staples. Finally, in July 2000, Utility Audit changed its recommendation and advised Horace Mann to "switch to another carrier other than MCI unless the terms and conditions of MCI are acceptable," after MCI refused to

refund what Utility Audit believed to be overcharges as the result of rounding.[1]

In the meantime, on its own, Horace Mann obtained a pricing proposal from Global Crossing, a telecommunications provider never mentioned in any of Utility Audit's reports. Global Crossing's proposal was substantially cheaper than any of the proposals Utility Audit had obtained for Horace Mann, and would result in an annual savings of $1.2 million. Horace Mann accepted Global Crossing's proposal and contracted with it rather than with any of the providers Utility Audit had suggested.

Horace Mann paid a total of $25,000 to Utility Audit, $15,000 for savings realized due to Utility Audit's review of past bills, and $10,000 for unspecified recommendations for future savings. But Horace Mann paid Utility Audit nothing for the $1.2 million it stood to save each year by switching to Global Crossing. Utility Audit eventually billed Horace Mann for the 40% of savings it believed it was due under the terms of the contract; Horace Mann refused to pay.

Utility Audit then sued Horace Mann. Originally Utility Audit alleged a single claim of breach of contract. Later it attempted to add a claim of unjust enrichment, alleging in the alternative to its contract claim that its recommendation to solicit better cheaper telephone rates fell outside the parties' contract and it was therefore entitled to *quantum meruit* damages based upon the money Horace Mann saved with Global Crossing. The district court denied Utility Audit's request for leave to amend its complaint as futile, concluding that the recommendation to solicit better rates was within the subject matter of the parties' contract.

---

[1] According to Utility Audit, MCI would round up to the nearest penny the charge for each long distance telephone call.

Both parties then filed motions for summary judgment. Utility Audit argued that it was entitled to summary judgment because it was undisputed that Horace Mann implemented its recommendation to solicit better prices, and therefore it was entitled to 40% of the $1.2 million Horace Mann saved during the first year of its contract with Global Crossing. Horace Mann argued, on the other hand, that it owed nothing and was entitled to summary judgment because it was undisputed that (1) Utility Audit never recommended the switch to Global Crossing, and (2) the suggestion Utility Audit made to solicit more favorable proposals was so general that it covered the entire universe of possibilities, and therefore could not be considered a "recommendation" under the ordinary definition of that word.

The district court granted summary judgment to Horace Mann. It concluded that Horace Mann never implemented most of Utility Audit's recommendations, such as the recommendation to renew its contract with MCI after obtaining from it more favorable rates, or to accept the proposals Utility Audit obtained from Qwest, Staples, and AT&T. As for Utility Audit's suggestion generally that Horace Mann solicit more favorable proposals, the district court agreed with Horace Mann that the suggestion was too general to be considered a "recommendation."

## II.  ANALYSIS

Utility Audit concedes that Global Crossing was not among the telecommunication providers that it recommended to Horace Mann. Nevertheless, it contends that the undisputed evidence establishes that by accepting Global Crossing's proposal, Horace Mann was following its general recommendation to contract with a cheaper telephone service provider. Accordingly, Utility Audit argues that the district court erred by not granting it summary judgment. Alternatively,

Utility Audit argues that whether Horace Mann was following its recommendation when it accepted Global Crossing's proposal is a disputed question of fact which precluded the district court from granting summary judgment to Horace Mann.

We review *de novo* the district court's decision to grant Horace Mann's motion for summary judgment and to deny Utility Audit's. *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 (7th Cir. 2003). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* The interpretation of an unambiguous contract is a question of law, and therefore a dispute over the terms of an unambiguous contract is suited to disposition on summary judgment. *Id.*; *Kallman v. Radioshack Corp.*, 315 F.3d 731, 735 (7th Cir. 2002).

Under Illinois law, which the parties agree governs, contract terms are interpreted according to their plain meaning unless otherwise defined. *Trade Center v. Dominick's Finer Foods*, 711 N.E.2d 333, 335 (Ill. App. Ct. 1999). Although words should be given their ordinary and accepted meaning, they must also be viewed in context, and the contract must be considered as a whole in order to ascertain the parties' intent. *Id.* at 335-36. The terms should be construed so that the contract is "fair, customary, and such as prudent persons would naturally execute," and is "rational and probable." *Foxfield Realty, Inc. v. Kubala*, 678 N.E.2d 1060, 1063 (Ill. App. Ct. 1997).

Given this backdrop, it is clear that in contracting with Global Crossing, Horace Mann was not following any "recommendation" made by Utility Audit as that word is used in the contract. The word "recommendation" is defined as "a suggestion that something is good or suitable for a *particular* job," while "recommend" is defined as "to suggest

that (a *particular* action) should be done." CAMBRIDGE INTERNATIONAL DICTIONARY OF ENGLISH (1995) (emphasis added). The only particular recommendations Utility Audit made were to either (1) re-sign with MCI at a more favorable rate, or (2) accept one of the more favorable proposals offered by Qwest, Claricom/Staples, or AT&T. Horace Mann followed neither.

Utility Audit contends that a "recommendation" need not suggest a *particular* course of action, and that the definition of the word is broad enough to encompass *any* "advice or counsel," quoting BLACK'S LAW DICTIONARY (6th ed. 1990). Therefore, it argues, its general advice to Horace Mann to remain with MCI unless it found cheaper rates elsewhere was a "recommendation" under the terms of the contract. But because Utility Audit's advice was so broad that it included the entire universe of options available to Horace Mann—in short, to either switch or not switch—its interpretation leads to an irrational result. It is not reasonable to conclude that Horace Mann bargained to pay Utility Audit the hundreds of thousands of dollars it seeks for advice no more particular than to either find cheaper rates or renew its current contract. Even Utility Audit did not appear at the time to believe that it would be entitled to a share of future savings merely by offering such general advice—it proceeded to solicit proposals from other providers and make specific recommendations to Horace Mann about which proposals to accept.

Furthermore, Utility Audit's interpretation of the contract would render meaningless the term that allowed Horace Mann to reject any of Utility Audit's recommendations. *Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 705 (7th Cir. 2002). Because Utility Audit had recommended every possible course of action to Horace Mann, any course Horace Mann would have chosen would have been encompassed by one of Utility Audit's broad recommendations.

Utility Audit's broad interpretation of the word "recommendation" is also not supported by the unreported decision it cites, *Nat'l Utility Serv., Inc. v. Savannah Foods & Indus., Inc.*, No. 91-2891, 1994 U.S. Dist. LEXIS 21489 (D.N.J. Sept. 9, 1994). In *Savannah Foods*, a utility auditor advised its client that it was overpaying for natural gas. It suggested that a cheaper route might be to find a supplier that charged only for the natural gas itself, and to contract separately for the transportation of the gas if an anticipated change in the law permitted it. *Id.* at **4-5. The recommendation made by the auditor in *Savannah Foods* was therefore specific and provided guidance based on recent changes in the law, as opposed to Utility Audit's general suggestion to find cheaper rates.

Utility Audit identifies two other recommendations for which it contends it is entitled to a share of Horace Mann's savings. First, Utility Audit argues that it saved Horace Mann a substantial amount of money by bringing to Horace Mann's attention a provision in its contract with MCI that would have penalized it for switching carriers before the contract expired November 30, 2000. But Utility Audit offered no evidence that Horace Mann had ever planned to switch carriers before its contract with MCI expired. Second, Utility Audit argues that it saved Horace Mann money by recommending that it demand yearly rate reviews in any new long-term contract it negotiated. But again, Utility Audit has offered no evidence that Horace Mann's contract with Global Crossing included yearly rate reviews (Horace Mann contends that it does not).

As for the district court's denial of Utility Audit's motion for leave to amend, we agree with the district court that adding the proposed unjust enrichment claim would be futile. *Guise v. BWM Mortg., L.L.C.*, 377 F.3d 795, 801 (7th Cir. 2004) (district court may exercise discretion to deny leave to amend if proposed claim would be futile). In the proposed claim, Utility Audit alleged in the alternative to

its contract claim that its recommendation to Horace Mann to solicit cheaper telephone rates fell outside the scope of its contract to identify sources of "future savings," and therefore it was entitled to *quamtum meruit* damages based upon the money Horace Mann saved by switching to Global Crossing. It also alleged that it was entitled to be compensated for the "counseling" and "step-by-step instructions on how to obtain the most cost efficient long distance plan" it gave Horace Mann, information Utility Audit asserts that Horace Mann used to its benefit while negotiating with Global Crossing.

When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003); *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Corp.*, 812 N.E.2d 620, 626 (Ill. App. Ct. 2004). In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982). The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract. *Cromeens*, 349 F.3d at 397; *Indus. Lift*, 432 N.E.2d at 1002.

Utility Audit is correct that its contract with Horace Mann contains no terms or provisions dealing specifically with soliciting cheaper proposals for telephone service. But despite the absence of specific terms, the subject matter of the contract clearly encompasses the work it did for Horace Mann identifying sources of savings including potential "future savings." Therefore we agree with the district court that the contract governs Utility Audit's proposed claim

that it is entitled to a share of Horace Mann's savings. Although Utility Audit's expectations were not realized because Horace Mann did not contract with one of the recommended providers, Utility Audit assumed the risk that it would not be entitled to a share of Horace Mann's savings with Global Crossing when it agreed to the term of the contract that allowed Horace Mann to reject its recommendations. *Cromeens*, 349 F.3d at 397 (unjust enrichment is not a means for shifting risks assumed under a contract); *First Commodity*, 766 F.2d at 1011 (same).

Accordingly, we AFFIRM the judgment of the district court.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*