(No. 98814.—

# GENERAL AGENTS INSURANCE COMPANY OF AMERICA, INC., Appellee, v. MIDWEST SPORTING GOODS COMPANY *et al.*, Appellants.

*Opinion filed March 24, 2005.—Rehearing denied May 23, 2005.*

Gregory J. Abbott, of Downers Grove, for appellant Midwest Sporting Goods Co.

Patrick M. Graber, Michael Bart Rinn and Veronica Nulman, of McCullough, Campbell & Lane, of Chicago, for appellee.

Hugh C. Griffin, John B. Haarlow, Janette M. Forman and Daniel S. Lambert, of Lord, Bissell & Brook,

L.L.P., of Chicago, for *amici curiae* Certain Underwriters at Lloyd's London.

JUSTICE THOMAS delivered the opinion of the court:

At issue in this case is whether, following a declaration that an insurer has no duty to defend its insured, the insurer is entitled to reimbursement of the amounts paid for the defense of its insured in the underlying lawsuit. The circuit and appellate courts held that the insurer was entitled to reimbursement. For the following reasons, we reverse the judgments of the circuit and appellate courts.

## BACKGROUND

The City of Chicago and Cook County sued Midwest Sporting Goods Company (Midwest) and other defendants for creating a public nuisance by selling guns to inappropriate purchasers. Midwest tendered defense of the suit to General Agents Insurance Company of America (hereinafter Gainsco), its liability carrier. Gainsco denied coverage. The City of Chicago and Cook County then filed their first amended complaint against Midwest and other defendants. Midwest again tendered defense of the suit to Gainsco. On July 23, 1999, Gainsco responded to Midwest's independent counsel as follows:

> "We wish to acknowledge and confirm our receipt and review of the First Amended Complaint that you forwarded to our office on behalf of your client and our Insured, Midwest Sporting Goods, Inc. by letter dated April 28, 1999. This letter will supplement Gainsco's letter of December 3, 1998 denying coverage with respect to the plaintiff's original complaint in this matter. We have had an opportunity to review the allegations of the First Amended Complaint, as well as the policy documentation, and without waiving the Company's rights or defenses under the Policy, would like to call the following points to your attention.

\*\*\* [The letter then quotes certain policy language.]

The policy only applies to damages because of property damage or bodily injury caused by an occurrence. The First Amended Complaint does not seek damages because of property damages or bodily injury. As such, the claim is not covered under the Policy.

The First Amended Complaint alleges that the Insured is liable to the plaintiffs for various acts of intentional and/or willful conduct. As a consequence, and based upon the above-noted policy provisions, the claim may not be covered under the Policy.

Additionally, to the extent that the claim involves periods of time that fall outside of the periods of time to which the coverage afforded by the Company covers, the claim is not covered by the Policy.

Please note that to the extent that the claim seeks injunctive relief, the claim is not a claim for damages and, thus, is not afforded coverage under the Policy. Further, to the extent that the claim is for punitive or exemplary damages, the claim is not afforded coverage under the Policy.

Subject to the foregoing, and without waiving any of its rights and defenses, *including the right to recoup any defense costs paid in the event that it is determined that the Company does not owe the Insured a defense in this matter*, the Company agrees to provide the Insured a defense in the captioned suit. In light of the competing interests between the Company and the Insured in respect of the coverage for this matter, the Company agrees to the Insured's selection and use of your firm as its counsel in this matter. However, the Company notes its right to associate with the Insured and its counsel in the defense of the underlying litigation.

\*\*\*

Please note that any acts taken by or on behalf of the Company are taken under and pursuant to a full reservation of its rights and defenses under the Policy. Likewise, we will understand that any acts taken by or on behalf of the Insured are taken pursuant to a reservation of rights as well." (Emphasis added.)

Based upon the record in this case, it does not appear that Midwest ever responded to Gainsco's reservation of

rights letter. Midwest thereafter accepted Gainsco's payment of defense costs.

On October 28, 1999, Gainsco filed a declaratory judgment action seeking, *inter alia*, a declaration that it did not owe Midwest a defense in the underlying litigation. The declaratory judgment action also asserted a claim for recovery of all defense costs paid to Midwest's independent counsel on behalf of Midwest in the underlying litigation. On June 5, 2000, Gainsco filed its first amended complaint for declaratory judgment. Midwest responded with an answer and counterclaim.

Gainsco then filed a motion for summary judgment in its declaratory judgment action, and Midwest filed a cross-motion for summary judgment. Following a hearing, the circuit court of Cook County entered summary judgment in favor of Gainsco, declaring that Gainsco had no duty to defend Midwest in the underlying litigation. The trial court denied Midwest's cross-motion for summary judgment. In ruling on Gainsco's motion for summary judgment, the trial court noted that the issue before it was whether the plaintiffs in the underlying complaint were seeking damages in the nature of economic loss or bodily injury. The trial court held that based upon case law, the damages sought by the plaintiffs in the underlying case amounted only to economic loss, and therefore held that Gainsco was entitled to summary judgment on its declaratory judgment action.

Gainsco then filed a motion for entry of judgment for recovery of defense costs, seeking to recover the defense costs that it had paid to Midwest's independent counsel for Midwest's defense of the underlying litigation. The motion for defense costs included the affidavit of Rita Beck, a senior claims examiner for Gainsco, stating that Gainsco had paid $40,517.34 for the defense of Midwest in the underlying litigation. The trial court stayed consideration of Gainsco's motion for defense costs pend-

ing Midwest's appeal of the trial court's finding that Gainsco was not obligated to defend Midwest.

On appeal, the appellate court affirmed the trial court's judgment, holding that Gainsco had no duty to defend or indemnify Midwest against the underlying claim. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 328 Ill. App. 3d 482 (2002). Midwest did not seek further review of the appellate court's decision.

Thereafter, the trial court considered Gainsco's motion for entry of judgment for recovery of defense costs. Following briefing and oral argument, the trial court held that Gainsco had reserved its right to recoup its costs for defending Midwest and therefore granted Gainsco's motion. The trial court ordered Midwest to pay Gainsco $40,517.34. Midwest then appealed the trial court's ruling on the motion for recovery of defense costs.

The appellate court, with one justice dissenting, again affirmed the trial court's judgment. 349 Ill. App. 3d 529. On appeal, Midwest argued that Gainsco had paid the defense costs pursuant to the insurance contract, which made no provision for the recovery sought by Gainsco. In addition, because the relationship between the parties was governed by contract, Gainsco could not recover defense costs under a theory of unjust enrichment. 349 Ill. App. 3d at 530-31.

The appellate court rejected Midwest's argument, stating that Midwest misconstrued the payments made by Gainsco. 349 Ill. App. 3d at 531. The appellate court found the arrangement in this case similar to the arrangement made between the parties in *City of Chicago v. McKechney*, 205 Ill. 372 (1903). The appellate court noted that in *McKechney*, the City of Chicago had agreed in 1895 to pay McKechney to construct a tunnel. However, in 1897, McKechney demanded increased payments due to difficulties encountered in the construction. When

the City thereafter paid McKechney at its regular rate of pay, McKechney stopped work and sued the City, claiming the payment violated an 1897 revision to the original contract. In 1898, the City and McKechney entered into a new arrangement for the resumption of work pending a determination of the parties' rights in the lawsuit. Under the 1898 agreement, the City agreed to pay McKechney a rate higher than that agreed to in the 1895 contract, but stated that its agreement was without prejudice to its right to recover any overpayment if the court determined that the 1895 contract applied. This court found that the 1898 agreement was an accommodation pending litigation that preserved the City's rights under the 1895 contract.

The appellate court characterized the parties' actions in this case, like that of the parties in *McKechney*, as an "accommodation pending litigation to determine whether Gainsco owed Midwest the cost of defending the lawsuit the City of Chicago brought against Midwest." 349 Ill. App. 3d at 532. The appellate court stated that, "[l]ike the 1898 arrangement in *McKechney*, the accommodation proposed in Gainsco's letter reserved rights to litigate the question of whether Gainsco owed the payments sought, and the right to recover any amounts the court later determined Gainsco did not owe." 349 Ill. App. 3d at 532. The appellate court stated that it saw "no reason to invalidate the accommodation pending litigation here." 349 Ill. App. 3d at 532.

The appellate court then noted that courts in other jurisdictions had reached a similar result. For example, the court in *Buss v. Superior Court*, 16 Cal. 4th 35, 939 P.2d 766, 65 Cal. Rptr. 366 (1997), ordered an insured to reimburse its insurer for defense costs paid on claims that were not within the coverage of the insured's policy. 349 Ill. App. 3d at 532. In addition, the court in *Walbrook Insurance Co. v. Goshgarian & Goshgarian*, 726 F.

Supp. 777, 784 (C.D. Cal. 1989), held that an insured was required to reimburse its insurer for defense costs incurred in the underlying suit where the insurer reserved the right to seek reimbursement of defense costs and the insured, although objecting to the reservation, nonetheless accepted payment of the defense costs. 349 Ill. App. 3d at 532-33. Finally, the appellate court observed that the United States District Court for the Southern District of Illinois, in *Grinnell Mutual Reinsurance Co. v. Shierk*, 996 F. Supp. 836 (S.D. Ill. 1998), had stated that it believed that this court would follow the reasoning of *Buss* and *Walbrook* and therefore held that an insurer had the right to reimbursement of defense costs when the underlying claims were not covered by the insurance policy and the insurer had reserved the right to seek reimbursement. 349 Ill. App. 3d at 533.

The appellate court rejected Midwest's argument that the court should not adopt the reasoning of *Buss, Walbrook* and *Grinnell* because those decisions give an insurance company too much leverage. The appellate court stated that if Midwest had refused to accept the funds under Gainsco's conditions, Midwest could have forced Gainsco to either defend without a right of reimbursement or deny a defense and risk losing its policy defense if it was found in breach of the insurance contract. 349 Ill. App. 3d at 534. Finally, the appellate court reiterated that the payments made by Gainsco were not made pursuant to Midwest's insurance policy, but rather were an "accommodation pending litigation to determine whether Gainsco owed Midwest, under the insurance contract, a defense." 349 Ill. App. 3d at 534.

The dissenting justice disagreed that Illinois law supported the majority's decision. The dissenting justice stated that an insurer's duty to defend its insured arises from and is limited by the express undertaking to defend as stated in the contract of insurance. 349 Ill. App. 3d at

535 (McBride, J., dissenting). Here, there was no language in the policy providing for reimbursement of costs. 349 Ill. App. 3d at 535 (McBride, J., dissenting).

As noted, this court allowed Midwest's petition for leave to appeal. 177 Ill. 2d R. 315. This court also allowed Certain Underwriters at Lloyd's London to file an *amicus curiae* brief on behalf of Gainsco. 155 Ill. 2d R. 345.

## ANALYSIS

Although it is not clear from the record, it appears that Gainsco's motion for recovery of defense costs was treated as a motion for summary judgment. The trial court decided the motion based upon the briefs submitted by the parties and oral argument, without an evidentiary hearing. A circuit court's entry of summary judgment is subject to *de novo* review. *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141, 149 (2003).

As a preliminary matter, we address the appellate court's finding that the arrangement in this case was similar to the arrangement made between the parties in *City of Chicago v. McKechney*, 205 Ill. 372 (1903). We find that the appellate court's reliance on *McKechney* was misplaced. *McKechney* did not involve an insurance contract. Consequently, although there may be some factual similarities between this case and *McKechney*, we find that it is more appropriate to consider the instant case in light of case law specifically addressing insurance contracts and an insurer's reservation of its right to reimbursement of defense costs. Thus, although the 1898 agreement between the parties in *McKechney* was properly characterized as an "accommodation pending litigation," we decline to characterize the circumstances surrounding Gainsco's July 23, 1999, letter as such. The *McKechney* decision is simply inapposite to this case.

We turn then to the parties' arguments before this court. Midwest argues that Gainsco failed to establish

any legal basis that would entitle it to an award of reimbursement of defense costs. Midwest notes that the insurance policy between Midwest and Gainsco contains no provisions allowing Gainsco to recover defense costs. Further, because there was an express written insurance contract between the parties, Gainsco cannot claim that it is entitled to recover defense costs under a theory of unjust enrichment. In addition, Gainsco's reservation of rights letter could only reserve the rights contained within the insurance policy and could not create new rights. In any event, the language in the reservation of rights letter clearly establishes that Gainsco paid the defense costs pursuant to the insurance policy.

Gainsco responds that each of the preceding arguments must fail because there is no contract governing the parties' relationship. Gainsco argues that its duty to defend extended only to claims for damages that were payable or potentially covered under a Gainsco policy. Here, as the circuit and appellate courts found, the Gainsco policies did not apply to the underlying litigation. In addition, Gainsco notes that numerous decisions, including *Buss*, *Walbrook* and *Grinnell* support the trial court's decision.

An insurer's duty to defend its insured is much broader than its duty to indemnify its insured. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). A court must compare the allegations in the underlying complaint to the policy language in order to determine whether the insurer's duty to defend has

arisen. *Outboard Marine*, 154 Ill. 2d at 125. If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 438-39 (1994). The allegations in the underlying complaint must be liberally construed in favor of the insured. *Outboard Marine*, 154 Ill. 2d at 125. In addition, if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy. *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 73. When the underlying complaint against the insured alleged facts within or potentially within the scope of policy coverage, the insurer taking the position that the complaint is not covered by its policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 371 (1999).

In the instant case, as noted, Gainsco chose both to defend under a reservation of rights and to seek a declaratory judgment that there was no coverage. Gainsco's reservation of rights letter provided that it reserved the right to recoup any defense costs paid in the event it was determined that Gainsco did not owe Midwest a defense. The gravamen of Midwest's argument on appeal is that Gainsco could not reserve the right to recoup defense costs because the insurance contract between the parties does not contain a provision allowing Gainsco the right to recoup defense costs. In turn, the gravamen of Gainsco's response is that there is no contract governing the relationship between the parties because both the circuit and appellate courts have held that the policies issued by Gainsco to Midwest did not apply to the underlying litigation. Accordingly, Gainsco maintains that it had

no duty to defend Midwest and thus is entitled to recoup the amounts paid for Midwest's defense.

In support of its argument, Gainsco points to decisions from other jurisdictions where courts have held that an insurer may recover its defense costs if it specifically reserves the right to recoup those costs in the event it is determined that the insurer does not owe the insured a defense. Gainsco notes that *Grinnell Mutual Reinsurance Co. v. Shierk*, 996 F. Supp. 836 (S.D. Ill. 1998), the only decision interpreting Illinois law on this issue, is indistinguishable from this case and directly supports the circuit court's decision to grant Gainsco's motion for recovery of defense costs. In *Grinnell*, the insured, Shierk, was sued by his wife for negligence in connection with an incident where he discharged a gun in her direction, causing a bullet to strike her in the face. *Grinnell*, 996 F. Supp. at 836. Shierk tendered defense of the lawsuit to Grinnell Mutual Reinsurance Company (Grinnell), claiming coverage pursuant to his homeowner's insurance policy. *Grinnell*, 996 F. Supp. at 836. Grinnell agreed to defend Shierk, but expressly reserved the right to later deny coverage and reserved the right to seek reimbursement from Shierk in the event a declaratory judgment action found that Grinnell had no duty to defend. *Grinnell*, 996 F. Supp. at 836. The district court later determined that Grinnell had no duty to defend. *Grinnell*, 996 F. Supp. at 838.

The district court then considered whether Grinnell was entitled to reimbursement of funds that it had already expended in defending Shierk. *Grinnell*, 996 F. Supp. at 838-39. The district court noted that there was no Illinois case law addressing the issue, but that such relief was found to be available in other jurisdictions. *Grinnell*, 996 F. Supp. at 839. The district court predicted that this court would order reimbursement of defense costs, observing that Grinnell specifically reserved the

right to seek reimbursement and that Shierk, fully aware of Grinnell's reservation of its right to reimbursement, accepted the benefit of Grinnell's defense. *Grinnell*, 996 F. Supp. at 839.

Gainsco notes that the court in *Grinnell* cited a decision from a California federal district court, *Walbrook Insurance Co. v. Goshgarian & Goshgarian*, 726 F. Supp. 777 (C.D. Cal. 1989), which also supports the trial court's decision to order reimbursement. In that case, the insureds had argued that even if their insurer did not have a duty to defend in the underlying action, the insurer was not entitled to reimbursement of defense fees because the insurer had failed to make an adequate reservation of rights. *Walbrook*, 726 F. Supp. at 781. The reservation of rights letter sent to the insureds stated that the insurer specifically reserved the right to recover all sums paid on behalf of the insureds for defense, settlement or satisfaction of the judgment. *Walbrook*, 726 F. Supp. at 782. The insureds, however, responded by objecting to the reservation of rights and refusing to consent to or acknowledge the validity of those rights, although the insureds did accept $500,000 in payments from the insurer to their independent counsel in the underlying suit. *Walbrook*, 726 F. Supp. at 782. The district court held that there was adequate evidence of an understanding that the insurer would seek reimbursement, and that the insureds' acceptance of the money constituted an implied agreement to the reservation. *Walbrook*, 726 F. Supp. at 784.

Gainsco notes that the district court in *Grinnell* also relied on a decision from the Supreme Court of California. In *Buss v. Superior Court*, 16 Cal. 4th 35, 939 P.2d 766, 65 Cal. Rptr. 366 (1997), the court also addressed whether an insurer could recover reimbursement of defense costs from its insured. The underlying action in that case asserted 27 causes of action, of which only one claim

potentially fell within policy coverage. *Buss*, 16 Cal. 4th at 41-42, 939 P.2d at 770, 65 Cal. Rptr. at 370. The insurer accepted defense of the underlying action, but reserved all of its rights, including the right to deny that any cause of action was actually covered and the right to be reimbursed for defense costs in the event it was later determined that there was no coverage. *Buss*, 16 Cal. 4th at 42, 939 P.2d at 770, 65 Cal. Rptr. at 370.

In addressing the issue, the court first noted that in a "mixed" action, involving claims that are at least potentially covered and claims that are not, an insurer nonetheless has a duty to defend the claim in its entirety. *Buss*, 16 Cal. 4th at 47-48, 939 P.2d at 774, 65 Cal. Rptr. at 374. The court then stated that with regard to "mixed" claims, an insurer may not seek reimbursement for claims that are at least potentially covered, but may seek reimbursement for defense costs as to the claims that are not even potentially covered. *Buss*, 16 Cal. 4th at 47-48, 939 P.2d at 774, 65 Cal. Rptr. at 374. The court explained that with regard to defense costs for claims that are potentially covered, the insured had paid premiums and the insurer had bargained to bear those costs, so that there was no right of reimbursement implied in the policy or implied in law. *Buss*, 16 Cal. 4th at 49, 939 P.2d at 775, 65 Cal. Rptr. at 375. The court noted exceptions would exist if the policy itself provided for reimbursement or if there was a separate contract supported by separate consideration. *Buss*, 16 Cal. 4th at 50, 939 P.2d at 776, 65 Cal. Rptr. at 376. However, with regard to claims that are not even potentially covered, the insured had not paid premiums to the insurer and the insurer did not bargain to bear those costs. *Buss*, 16 Cal. 4th at 50-51, 939 P.2d at 776, 65 Cal. Rptr. at 376. Consequently, the court reasoned that the insurer has a right to reimbursement implied in law as quasi-contractual. *Buss*, 16 Cal. 4th at 51, 939 P.2d at 776, 65

Cal. Rptr. at 376. Under the law of restitution, the insured has been "enriched" through the insurer's bearing of unbargained-for defense costs, an enrichment that must be deemed unjust. *Buss*, 16 Cal. 4th at 51, 939 P.2d at 777, 65 Cal. Rptr. at 377.

Finally, Gainsco notes that other jurisdictions also have found that an insurer may recover defense costs from its insured where the insurer agrees to provide the insured a defense pursuant to an express reservation of rights, including the right to recoup defense costs, the insured accepts the defense, and a court subsequently finds that the insurer did not owe the insured a defense. See *United National Insurance Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir. 2002) (insurer was entitled to reimbursement of defense costs where the insurer reserved the right to recover defense costs and the insured accepted payment of defense costs); *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F. Supp. 190 (M.D. La. 1996) (insurer was entitled to reimbursement for all costs of defense where it timely and specifically reserved the right to seek reimbursement and insured did not object to the reservation); *Knapp v. Commonwealth Land Title Insurance Co.*, 932 F. Supp. 1169 (D. Minn. 1996) (where insurer reserved its right to seek reimbursement of attorney's fees and costs, insured's silence in response to the reservation of rights letter and subsequent acceptance of defense constituted an implied agreement to the reservation of rights); *North Atlantic Casualty & Surety Insurance Co. v. William D.*, 743 F. Supp. 1361 (N.D. Cal. 1990) (where insurer sent letter to the insured reserving the right to reimbursement, and the insured accepted payment of defense fees without comment, insurer was entitled to reimbursement from insured); *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (court states that proper course for insurer that believes it owes no duty to defend

"is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy"); *Colony Insurance Co. v. G&E Tires & Service, Inc.*, 777 So. 2d 1034 (Fla. App. 2000) (insurer was entitled to reimbursement of defense costs where it timely and expressly reserved the right to seek reimbursement, and the insured accepted the offer of a defense with a reservation of rights).

In general then, the decisions finding that an insurer is entitled to reimbursement of defense costs are based upon a finding that there was a contract implied in fact or law, or a finding that the insured was unjustly enriched when its insurer paid defense costs for claims that were not covered by the insured's policy. Although such reasoning was not the basis for the appellate court's decision in this case, Gainsco notes that this court may affirm the appellate court on any basis, and urges this court to adopt the reasoning of the courts in the preceding cases.

Gainsco is correct that it would be entitled to reimbursement of the defense costs paid in the underlying action if this court adopted the analysis set forth in the preceding cases. Gainsco timely and expressly reserved its right to reimbursement of defense costs, Midwest accepted payment of those defense costs without objection, and a declaratory judgment action determined that Gainsco did not owe Midwest a defense in the underlying lawsuit. Our research reveals, however, that other jurisdictions, albeit a minority, have refused to allow an insurer to receive reimbursement of its defense costs even though the underlying claim was not covered by the insurance policy and the insurer had specifically reserved its right to reimbursement.

Upon review, we find the analysis of those decisions refusing to allow reimbursement to be more persuasive

and more on point with Illinois case law than the cases cited by Gainsco. For example, in *Shoshone First Bank v. Pacific Employers Insurance Co.*, 2 P.3d 510, 514 (Wy. 2000), the court declined to allocate costs between covered and uncovered claims, holding that "unless an agreement to the contrary is found in the policy, the insurer is liable for all the costs of defending the action." The court rejected the insurer's claim that it had the right to allocate defense costs for uncovered claims because its reservation of rights letter had specifically reserved the right to allocate the fees, expenses and indemnity payments when the case was resolved. *Shoshone First Bank*, 2 P.3d at 515. The court stated:

> "The insurer is not permitted to unilaterally modify and change policy coverage. We agree with the Supreme Court of Hawaii that a reservation of rights letter 'does not relieve the insurer of the costs incurred in defending its insured where the insurer was obligated, in the first instance, to provide such a defense.' *First Insurance Co. of Hawaii, Inc. v. State, by Minami.* 66 Haw. 413, 665 P.2d 648, 654 (1983). [The insurer] could have included allocation language in the Policy, but it failed to do so. We look only to the four corners of the policy to determine coverage, and where the policy is unambiguous, extrinsic evidence is not considered. [Citation.] The Policy issued to Shoshone by [the insurer] states a duty to defend, and allocation is not mentioned. In light of the failure of the policy language to provide for allocation, we will not permit the contract to be amended or altered by a reservation of rights letter." *Shoshone First Bank*, 2 P.3d at 515-16.

Accord *Texas Ass'n of Counties Government Risk Management Pool v. Matagorda County*, 52 S.W.3d 128, 44 Tex. Sup. Ct. J. 215 (2000) (absent provision providing for reimbursement of settlement funds, unilateral reservation of rights letter could not create rights not contained within the insurance policy).

The court in *Shoshone First Bank* then cited an unpublished decision from the United States District

Court for the District of Wyoming that clearly articulated the problem with allowing an insurer to reserve the right to seek reimbursement of defense costs. That court stated that:

"15. A reservation of rights letter does not create a contract allowing an insurer to recoup defense costs from its insureds.

16. The question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision. If an insurance carrier believes that no coverage exists, then it should deny its insured a defense at the beginning instead of defending and later attempting to recoup from its insured the costs of defending the underlying action. Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek a declaratory judgment as to coverage under the policy. However, to allow the insurer to force the insured into choosing between seeking a defense under the policy, and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists, places the insured in the position of making a Hobson's choice. Furthermore, endorsing such conduct is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract. If this became common practice, the insurance industry might extract coercive arrangements from their insureds, destroying the concept of liability and litigation insurance.

Order on Plaintiff's Motion for Summary Judgment, *America States Ins. Co. v. Ridco, Inc. Riddles Jewelry, Inc. And Ken B. Berger,* Civ. No. 95CV158D (D. Wyo. 1999)." *Shoshone First Bank,* 2 P.3d at 516.

We agree with the analysis of the court in *Shoshone First Bank,* as well as the United States District Court for the District of Wyoming in *America States Insurance Co.* As a matter of public policy, we cannot condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for

reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend. We recognize that courts have found an implied agreement where the insured accepts the insurer's payment of defense costs despite the insurer's reservation of a right to reimbursement of defense costs. However, as stated by the court in *America States Insurance Co.*, cited by the *Shoshone First Bank* court, recognizing such an implied agreement effectively places the insured in the position of making a Hobson's choice between accepting the insurer's additional conditions on its defense or losing its right to a defense from the insurer.

The United States Court of Appeals for the Third Circuit, applying Pennsylvania law, also has ruled that an insurer cannot recover defense costs even when it defends under a reservation of rights to recover defense costs if it is later determined there is no coverage. *Terra Nova Insurance Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989). The court reasoned that:

> "A rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights. Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation." *Terra Nova Insurance Co.*, 887 F.2d at 1219-20.

Again, we find the reasoning of the *Terra Nova* court to be more persuasive than the authorities cited by Gainsco. We agree that when an insurer tenders a defense or

pays defense costs pursuant to a reservation of rights, the insurer is protecting itself at least as much as it is protecting its insured. Thus, we cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it is later determined that the insurer did not owe a defense. Certainly, if an insurer wishes to retain its right to seek reimbursement of defense costs in the event it later is determined that the underlying claim is not covered by the policy, the insurer is free to include such a term in its insurance contract. Absent such a provision in the policy, however, an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter.

Moreover, as the Supreme Court of Hawaii recognized, "affording an insured a defense under a reservation of rights agreement merely retains any defenses the insurer has under its policy; it does not relieve the insurer of the costs incurred in defending its insured where the insurer was obligated, in the first instance, to provide such a defense." *First Insurance Co. of Hawaii, Inc. v. State of Hawaii*, 66 Haw. 413, 422, 665 P.2d 648, 654 (1983). Gainsco's reservation of rights letter could retain only those defenses that Gainsco had under its policy. Gainsco concedes that the insurance policies at issue did not provide for reimbursement of defense costs. Consequently, Gainsco's attempt to expand its reservation of rights to include the right to reimbursement must fail.

As previously noted, Gainsco argues that we need not look to the insurance contract between the parties to determine whether Gainsco had a right to reimbursement because the circuit and appellate courts have already determined that Gainsco owed no duty to defend. Gainsco maintains that because it had no duty to defend, it follows that there is no contract governing the relation-

ship between the parties. The problem with this argument is that Gainsco is attempting to define its duty to defend based upon the outcome of the declaratory judgment action. Although an insurer's duty to indemnify arises only after damages are fixed, the duty to defend arises as soon as damages are sought. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 158 (2004). As explained by the Court of Appeals for the Eighth Circuit:

> "Liberty remained obligated to defend [its insured] so long as there remained any question as to whether the underlying claims were covered by the policies. Upon determination that *** the claims against [the insured] were therefore excluded from coverage, the district court properly concluded that Liberty's duty to defend [its insured] in this action expired. Because we conclude that Liberty had a duty to defend [its insured] until such determination was made, we reject Liberty's argument that it is entitled to reimbursement of defense costs." *Liberty Mutual Insurance Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998).

We find the analysis of the court in *Liberty Mutual* to be well taken. Although Gainsco implies that it has always maintained that it did not owe Midwest a defense in the underlying matter, we note that Gainsco's reservation of rights letter reveals some uncertainty concerning coverage. With regard to allegations in the underlying claim that Midwest was liable to the plaintiffs for various acts of intentional and/or willful conduct, Gainsco's reservation of rights letter stated that "the claim *may not be* covered under the Policy." (Emphasis added.) Given this uncertainty, Gainsco correctly agreed to pay Midwest's defense costs in the underlying action and sought a declaratory judgment that it did not owe Midwest a defense. Gainsco thus remained obligated to defend Midwest as long as any questions remained concerning whether the underlying claims were covered by the policies. Because Gainsco's obligation to defend

continued until the trial court found that Gainsco did not owe Midwest a defense, Gainsco is not entitled to reimbursement of defense costs paid pending the trial court's order in the declaratory judgment action. The fact that the trial court ultimately found that the underlying claims against Midwest were not covered by the Gainsco policies does not entitle Gainsco to reimbursement of its defense costs.

In sum, we acknowledge that a majority of jurisdictions have held that an insurer is entitled to reimbursement of defense costs when (1) the insurer did not have a duty to defend, (2) the insurer timely and expressly reserved its right to recoup defense costs, and (3) the insured either remains silent in the face of the reservation of rights or accepts the insurer's payment of defense costs. We choose, however, to follow the minority rule and refuse to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties.

For the foregoing reasons, then, we reverse the decisions of the circuit and appellate courts awarding Gainsco reimbursement of defense costs, in the amount of $40,517.34, expended for the defense of Midwest in the underlying litigation.

*Appellate court judgment reversed;*
*circuit court judgment reversed.*