2019 IL App (1st) 181385-U

No. 1-18-1385

Third Division
December 11, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY INSURANCE CORPORATION, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 17 CH 4666 |
| FERRARA CANDY COMPANY and FERRARA CANDY COMPANY HOLDINGS, INC., | ) ) ) ) | Honorable Neil H. Cohen, Judge, presiding. |
| Defendants-Appellants. | ) | |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**O R D E R**

¶ 1     *Held*: The circuit court did not err in holding that plaintiffs did not owe a duty to defend and indemnify as the underlying suit does not allege violations or injuries occurring during the policy periods. The circuit court did not err in holding that plaintiffs were entitled to reimbursement of defense costs.

¶ 2     This appeal involves an insurance coverage dispute arising from an underlying suit filed

by Promotion in Motion, Inc. ("PIM") against defendants-appellants, Ferrara Candy

Corporation ("Ferrara Candy") and Ferrara Candy Company Holdings, Inc. ("Ferrara Holdings") (collectively, "defendants") in the United States District Court for the District of Delaware. In response to the suit against them, defendants sought insurance coverage from plaintiffs-appellees, Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Liberty Insurance Corporation ("Liberty Corp.") (collectively, "plaintiffs").

¶ 3        Liberty Mutual denied coverage and filed a declaratory judgment action with Liberty Corp. against defendants in the circuit court of Cook County, asking the court to find that it had neither the duty to defend nor indemnify defendants against PIM's lawsuit. The circuit court granted plaintiffs' motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure, 735 ILCS 5/2-615(e)(West 2016) and denied defendants' cross-motion for judgment on the pleadings. Defendants now appeal. For the reasons that follow, we affirm.

¶ 4                                      I. BACKGROUND

¶ 5        Ferrara Pan Candy Company, Inc. ("Ferrara Pan") is a manufacturer of candies and confections. Around fall of 2011 or in early 2012, Ferrara Pan and Farley's & Sathers Candy Company, Inc. ("Farley's") engaged in merger talks. On June 18, 2012, they publicly announced their merger which became effective on January 1, 2013. Defendant Ferrara Candy, successor-in-interest to Ferrara Pan, was formed as a result of this merger. Defendant Ferrara Holdings is a parent company of Ferrara Candy through a chain of successive wholly-owned subsidiaries.

¶ 6                                      A. Liberty Policies

¶ 7        Prior to the 2013 merger, Ferrara Pan procured insurance policies from plaintiffs. Specifically, Liberty Mutual issued two successive commercial general liability policies

("CGL Policies") to Ferrara Pan as the named insured. The first policy was effective from April 3, 2011 to May 10, 2012 ("the 2011 CGL Policy") and the second policy was effective from May 10, 2012 to May 10, 2013 ("the 2012 CGL Policy").

¶ 8        Liberty Corp. also issued two successive umbrella liability insurance policies ("Umbrella Policies") to Ferrara Pan as the named insured.[1] The first umbrella policy was effective April 3, 2011 to May 10, 2012 ("the 2011 Umbrella Policy"). The second umbrella policy was effective from May 10, 2012 to May 10, 2013 ("the 2012 Umbrella Policy"). Both the 2012 CGL Policy and the 2012 Umbrella Policy were cancelled, effective June 18, 2012 upon instruction by Ferrara Pan and in connection with its merger with Farley's.

¶ 9                                   B. Confidentiality Agreement

¶ 10        On November 14, 2012, Ferrara Pan, Ferrara Candy, and PIM entered into a Confidentiality Agreement.[2] The Confidentiality Agreement governed the use of PIM's trade secrets relating to the manufacturing of two products, Sour Jacks and Welch's Fruit Snacks. The Confidentiality Agreement defined "Ferrara" to include both the predecessor and successor entities. The Confidentiality Agreement provided that "Ferrara *** received and maintained in confidence proprietary and confidential information from PIM relating to PIM's formulae and ingredients for the Products and suppliers for juice, colors, flavors and purees." The Confidentiality Agreement covered all these previously disclosed confidential information as well as information to be disclosed by PIM to Ferrara.

---

[1] The terms of the Umbrella Policies issued by Liberty Corp. are materially identical to those of the CGL polices issued by Liberty Mutual.

[2] The parties stipulated that on June 18, 2012, Farley's and Ferrara Pan "publicly announced that they had completed their previously announced" merger. The Confidentiality Agreement was later executed in light of this announcement, which was entered and signed by Ferrara Pan, Ferrara Candy, and PIM. However, the merger ultimately became effective on January 1, 2013 as provided in PIM's complaint and as conceded by defendants in their brief.

¶ 11     With regards to prior disclosure, the agreement provided that Ferrara "expressly acknowledges that any Confidential Information with respect to the Products which was previously disclosed to it by PIM has not previously been disclosed by or used by Ferrara in violation of this Agreement and will not be so used or disclosed." The Agreement further provided that Ferrara shall "use the Confidential Information only for the purpose of manufacturing and packaging the products under contract for PIM." The term of the agreement was defined as "continuing in nature" and as surviving "any termination of the contract manufacturing relationship between PIM and [Ferrara Pan] and continue in full force and effect as long as and to the extent that PIM continues to maintain the confidentiality of the Confidential Information."

¶ 12                                C. PIM's Suit

¶ 13     On March 4, 2015, PIM filed suit against defendants in the United States District Court for the District of Delaware, Case No. 1:15-cv-00212-RGA ("underlying suit"). [3] On October 18, 2016, PIM filed a second amended complaint. In its second amended complaint, PIM asserted, *inter alia*, claims of misappropriation of trade secrets, breach of contract, trade dress infringement, violation of Delaware's Deceptive Trade Practices Act, and common law unfair competition. Relevant to this appeal are allegations in the second amended complaint pertaining to trade dress infringement in connection with a product by PIM that was manufactured by Ferrara Pan and, thereafter by its successor-in-interest, Ferrara Candy.

¶ 14     In its 138-paragraph complaint, PIM claimed that it markets snack foods, including "Sour Jacks" and "Welch's Fruit Snacks." PIM closely guards the formulations and processes for these products as trade secrets. The complaint provided that Ferrara Pan and

---

[3] At the time PIM filed its lawsuit in March 2015, Ferrara Pan had already merged with Farley's to form Ferrara Candy.

PIM maintained a long business relationship, whereby Ferrara Pan served as a manufacturer of PIM's products from 1990 until 2004, when PIM built its own manufacturing facilities. Despite PIM building its own facilities, "Ferrara Pan and its successor-in-interest Ferrara Candy continued as major suppliers of product to PIM until June 2014, and from June through December 2014 supplied additional product to PIM when PIM could not meet its own production needs."

¶ 15    PIM alleged that in 2012, Ferrara Pan had announced that it was merging with Farley's to form Ferrara Candy. In response to the merger announcement, PIM approached the management of Ferrara Pan and the new entity, Ferrara Candy with regards to executing a Confidentiality Agreement. According to PIM, it entered into a Confidentiality Agreement because it "became concerned that [its] relationship of trust with its close friends and business allies at Ferrara Pan might be jeopardized by the merger." Specifically, PIM was concerned that its confidential information "could be exposed to a broader and unauthorized audience at the much larger, newly merged, entity." By entering into the Confidentiality Agreement, PIM wanted to "continue the relationship of trust and confidentiality Ferrara Pan and PIM had previously shared."

¶ 16    PIM alleged that in violation of the Confidentiality Agreement, Ferrara Candy used PIM's trade secrets to manufacture competing products marketed as "Sour Buddies" and "Market Pantry Fruit Flavored Snacks" to Target Stores. According to PIM, prior to being entrusted with the PIM's trade secrets for Sour Jacks and Welch's Fruit Snacks, Ferrara Pan was "never able to achieve the superior qualities of taste and texture that set the brand apart." Thus, PIM alleged that Ferrara Candy could only have produced the competing products by misappropriating the trade secrets of PIM products, including the formulation and

manufacturing process. Additionally, PIM alleged that Ferrara Candy's "Black Forest Juicy Burst" products also misappropriated and misused the Welch's Fruit Snack trade secrets. Lastly, PIM alleged that Sour Buddies infringed on PIM's Sour Jacks trade dress. "Just as PIM's trade dress uses the configuration, outlines, and embossed details of a little boy," the Sour Buddies trade dress also used similar dimension, colors, overall shape and design. In light of its claims, PIM requested the District Court, *inter alia¸* to grant injunctive relief prohibiting the sale of the competing products, disgorgement of profits, compensatory damages and treble damages. PIM also sought an award of attorney's fees and costs.

¶ 17                                    D. Liberty Mutual's Defense

¶ 18        In April 2015, defendants notified Liberty Mutual of the underlying suit, seeking coverage under the CGL Policies and Umbrella Policies. In a letter, dated June 2, 2015, Liberty Mutual informed defendants of its coverage position. Liberty Mutual agreed to provide a defense to Ferrara Candy, subject to certain reservation of rights including, *inter alia¸* (1) "the right to deny coverage or any obligation to indemnify Ferrara Candy for any settlement or judgment paid or incurred by it for punitive damages;" (2) the right to withdraw from the defense of Ferrara Candy if it was determined that Liberty Mutual had no duty to defend; and (3) the "right to intervene in the suit for purposes of undertaking discovery and submitting proposed special verdict questions to differentiate covered from non-covered claims and/or asserting non-coverage." With respect to Ferrara Holdings, Liberty Mutual declined to provide a defense.

¶ 19        Additionally, Liberty Mutual informed Ferrara Candy of its right to select its own counsel given that their interests may conflict as Liberty Mutual was defending Ferrara Candy under reservation of rights on coverage for indemnity under the policy. Liberty

Mutual further noted that it would bear the cost of counsel, assuming that the expenses were reasonably incurred. Accordingly, Ferrara Candy retained counsel. Liberty Mutual also informed Ferrara Candy that it reserved the right "to later seek reimbursement from the insureds for indemnity payment and defense costs... should it be determined that the allegations of [the] Lawsuit or any subsequent lawsuit are precluded from coverage."

¶ 20    On March 31, 2017, counsel for Liberty Mutual advised counsel for Ferrara Candy that Liberty Mutual was withdrawing its defense. Liberty Mutual stated that following its review of PIM's second amended complaint, the close of discovery, the filing of dispositive motions and the stay of trial in the underlying suit, it re-evaluated its coverage position. Upon re-evaluation, Liberty Mutual determined there was no coverage for the claims asserted in the underlying suit. In light of its determination that no coverage existed, Liberty Mutual elected to discontinue its funding of Ferrara Candy's defense. Liberty Mutual also notified that it had filed, along with Liberty Corp., a declaratory judgment action against defendants in the circuit court of Cook County. The declaratory action further seeks recoupment of the defense costs Liberty Mutual had paid on behalf of Ferrara Candy for the past two years "in connection with the Underlying Action, [and] as expressly provided by the Illinois Defense Costs Endorsement in the CGL Policies."

¶ 21                    E. First Amended Complaint & Counterclaim

¶ 22    On or about December 8, 2017, plaintiffs filed their first amended complaint for declaratory judgment ("First Amended Complaint") in the circuit court. Count I sought a declaration that Liberty Mutual had no duty to defend or indemnify defendants in the underlying suit under the CGL Policies because: (1) no "bodily injury" or "property damage" is alleged to have occurred during the policy periods; (2) the underlying suit does not seek

damages for "bodily injury" or "property damage" as defined by the policies; (3) the underlying suit does not allege any "personal and advertising injury" caused by an offense during the policy periods; (4) the underlying suit does not seek damages for "personal advertising injury" as defined by the policies; and (5) even if the underlying suit sought damages for "bodily injury," "property damage," or "personal and advertising injury," coverage was barred by the policies' "terms, conditions or exclusions." Likewise, Count II sought a declaration that Liberty Corp. had no duty to defend or indemnify defendants under the Umbrella Policies for the same reasons.

¶ 23    Ferrara Candy filed amended counterclaims. Count I sought a declaration that Liberty Mutual had (1) wrongfully failed and refused to defend Ferrara Candy in the underlying suit; and (2) failed and refused to reimburse Ferrara Candy's full defense costs. Count II asserted a claim for breach of contract based on Liberty Mutual's alleged failure to pay defense costs and failure to cooperate with Ferrara Candy's efforts to settle the underlying suit. Count III asserted a claim under section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (West 2016), alleging that Liberty Mutual vexatiously and unreasonably failed to pay defense costs and withdrew its defense.

¶ 24                                   F. Cross-Motions

¶ 25    On March 2, 2018, the parties filed cross-motions. Plaintiffs moved for judgment on the pleadings regarding its duty to defend and indemnify. According to plaintiffs, they did not have a duty to defend because: (1) the underlying suit exclusively concerned conduct by the post-merger Ferrara entities and therefore, did not allege conduct that occurred during plaintiffs' policy periods as they were cancelled in connection with the merger; (2) PIM did not allege that defendants published or broadcasted to the public any infringing

"advertisement," as is required by the policies; and (3) even if defendants could meet its burden of showing that the underlying suit fell within the policies' coverage, any covered claims would be excluded by the knowing-violation exclusion in the policies. Given that it had no duty to defend, plaintiffs argued that they likewise had no duty to indemnify and must be reimbursed for the defense costs it had paid.

¶ 26    Ferrara Candy moved for partial judgment on the pleadings solely on the issue of plaintiffs' duty to defend. Ferrara Candy argued that Liberty Mutual had a duty to defend where the facts pled in PIM's complaint potentially supported a claim that an advertising injury offense was committed during the policy periods and there was a casual nexus between PIM's alleged injury and the alleged advertising activity. First, Ferrara Candy argued that "PIM's complaint specifically alleged that Ferrara's activities... including its use and marketing of the Infringing Sour Buddies' Trade Dress, constitute trade dress infringement... in violation of section 43(a) of the Lanham Act." Therefore, "[t]hese express allegations of trade dress infringement clearly establish an advertising injury offense under Liberty's Policies" which potentially occurred during the policy periods. Further, Ferrara Candy argued that a casual nexus exists given that "PIM alleged Ferrara's promotion and marketing of 'the Infringing Sour Buddies' Trade Dress" caused customer confusion in violation of Section 43(a) of the Lanham Act.

¶ 27    Additionally, Ferrara Candy argued that Liberty Mutual's policy exclusions do not preclude coverage for the underlying suit because (1) Liberty Mutual's exclusion for advertising injury caused "with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" is inapplicable as PIM could prevail on its claim without proving that defendants knowingly or deliberately infringed its trade dress;

(2) Liberty Mutual's policy exclusion for advertising injury out of "publication of material whose first publication took place before the beginning of the policy period" is inapplicable as there are no allegations as to when the trade dress infringement first occurred or "whether any infringing materials were published before the 4/3/2011 inception of Liberty Mutual's first policy"; (3) Liberty Mutual's exclusion for advertising injury "arising out of a breach of contract" is inapplicable as the breach of the Confidentiality Agreement concerns Ferrara Candy's misuse of PIM's trade secrets and not trade dress; and (4) Liberty Mutual's exclusion for advertising injury arising out of certain intellectual property violations, by its terms, does not apply to "infringement, in your 'advertisement', of... trade dress..." or to "use of another's advertising idea in your 'advertisement.'" For these reasons, Ferrara Candy argued that Liberty Mutual had a duty to defend.

¶ 28                              G. Circuit Court's Order

¶ 29        On May 23, 2018, the circuit court granted plaintiffs' motion for Judgment on the Pleadings pursuant to 735 ILCS 5/2-615(e), finding that the underlying suit does not allege a covered injury during the policy periods. The circuit court noted that "the Second Amended Complaint must allege 'bodily injury' 'property damage' or 'personal advertising injury' occurring or arising from an occurrence taking place between April 3, 2011 and June 18, 2012 for coverage to exist." The court held that the claims asserted in the second amended complaint were not based on any occurrence taking place within the CGL and Umbrella policy periods. The court reasoned that instead, "every claim asserted in the Second Amended Underlying Complaint is based on Ferrara Candy's alleged conduct following the execution of the Confidentiality Agreement on November 14, 2012." No allegations of actionable conduct prior to November 14, 2012 were alleged. Therefore, as a matter of law,

the court held that Liberty Mutual had no duty to defend or indemnify Ferrara. In doing so, the circuit court did not consider Liberty Mutual's alternative arguments that the second amended complaint does not allege a "personal advertising injury" and that the knowing violation exclusion of the policies applies.

¶ 30    Lastly, the circuit court ordered Ferrara Candy to repay Liberty Mutual for the defense costs, noting that Liberty Mutual's June 2, 2015 letter sufficiently notified Ferrara Candy "that there might not be coverage and that Liberty Mutual was reserving its right to terminate its defense and seek reimbursement for defense costs."

¶ 31                                            II. ANALYSIS

¶ 32    On appeal, defendants argue that the circuit court erred in granting judgment on the pleadings in favor of plaintiffs and denying its cross-motion for partial judgment because: (1) Liberty Mutual's duty to defend is triggered where the underlying complaint alleges a potentially covered personal and advertising injury offense taking place during the policy periods; and (2) Liberty Mutual has no right to reimbursement of the defense expenses it paid in connection with the underlying suit.

¶ 33                                        A. Standard of Review

¶ 34    "A motion for judgment on the pleadings tests the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by his compliant or, alternatively, whether the defendant by his answer has set up a defense which would entitle him to a hearing on the merits." *Village of Worth v. Hahn*, 206 Ill. App. 3d 987, 990 (1990). A court properly enters a judgment on the pleadings when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 56 (2004).

¶ 35        In deciding a motion for judgment on the pleadings, a court considers "[o]nly those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record." *Id.* at 56-57. "Moreover all well-pleaded facts and all reasonable inferences from those facts are taken as true." *Id.* at 57. Where both parties have filed a cross-motion for judgment on the pleadings, it is generally conceded that no issues of facts exist and that the issues before the court are solely issues of law. *People by Foxx v. Agpawa,* 2018 IL App (1st) 171976, ¶ 11. We review a trial court's order granting judgment on the pleadings *de novo. H&M Commercial Driver Leasing, Inc.*, 209 Ill. 2d at 57.

¶ 36                             B. Confidentiality Agreement

¶ 37        Defendants argue that the circuit court erred in inferring that all of the alleged claims occurred only after the November 14, 2012 execution of the Confidentiality Agreement. Defendants contend that the Confidentiality Agreement applies only to PIM's alleged trade secrets—the confidential formulae and methods of manufacturing its Sour Jacks and Welch's Fruit Snack products. However, the Agreement does not apply to PIM's trade dress—the purportedly distinctive shape of its Sour Jacks product. We agree.

¶ 38        The Confidentiality Agreement identifies any information relating to "PIM's formulae and ingredients for the Products and suppliers for juice, colors, flavors and purees" as "Confidential Information." The second amended complaint also confirms that the Confidentiality Agreement was created for the purpose of "ensur[ing] that parties would continue to maintain the integrity and secrecy of PIM's Trade Secrets." As such, we find that the Confidentiality Agreement pertains to PIM's trade secrets and has no bearing on PIM's trade dress infringement claim. Our inquiry then turns to whether PIM's claim of trade dress infringement occurred within the policy period and thereby, triggers a duty to defend. See

*General Agents Insurance Co. of America, Inc.*, 215 Ill. 2d at 155 (stating that "if several theories of recovery are alleged in the underlying complaint *** the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy.")

¶ 39                                C.  Duty to Defend

¶ 40        Defendants argue that the circuit court erred in holding that plaintiffs' duty to defend was not triggered because it "sets the pleading bar too high" and cannot be reconciled with Illinois law which provides that the duty to defend does not require the complaint to allege or use language affirmatively bringing the claims within the scope of the policies. Relying on this court's decision in *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 13250, defendants argue that where "the underlying complaint does not specify the date of the triggering event, the potential for coverage exists and the insurers must defend."

¶ 41        In addressing whether plaintiffs have a duty to defend the underlying suit, we turn to the legal standards governing the determination of an insurer's duty to defend. "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage." *General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 154 (2005). A court must compare the allegations in the underlying complaint to the policy language to determine whether the insurer has a duty to defend. *Id.* at 154-55. "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Id.* However, "it is the actual complaint, not some hypothetical version, that must be considered." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755–56 (2005). "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its

insured even if the allegations are groundless, false or fraudulent." *Midwest Sporting Goods Co.*¸ 215 Ill.2d at 155.

¶ 42    Accordingly, we will look at the underlying complaint, in conjunction with the policy language, to determine whether plaintiffs justifiably refused to defend the action. The policies provide that plaintiffs will defend Ferrara Pan against "any suit" and pay "sums" for claims of covered injuries. However, the policies define a "covered injury" as one that takes place during the policy periods. Defendants urge us to liberally construe PIM's complaint in their favor, because the date when the alleged trade dress infringement occurred is not specified, thus the claimed infringement could have fallen within the policy periods. Defendants cite to *Illinois Tool Works* to support their argument that any ambiguity as to the actual date of the triggering violation should be resolved in favor of finding a duty to defend.

¶ 43    We find *Illinois Tool Works* to be distinguishable. In *Illinois Tool Works*, plaintiffs brought multiple toxic tort claims, alleging that they were injured from exposure to hazardous chemicals manufactured by Illinois Tool Works and other manufacturers. *Illinois Tool Works Inc.,* 2015 IL App (1st) 132350, ¶ 23. Although some of the underlying complaints alleged "that exposure to an Illinois Tool product resulted in an injury, [the complaints] d[id] not set forth when the exposure occurred or when the injury manifested." *Id.* The court held that even if certain complaints did not specify when the alleged injury occurred, "the ambiguous or unstated time period must be resolved in favor of a duty to defend" as "[t]he bare allegations of the underlying complaints leave open the possibility that the plaintiffs' exposure or injury occurred during the policy periods." *Id.* Here, even though a specific date was not alleged in relation to the claimed injuries, PIM's complaint can be

clearly read with reference to separate time periods based on the entity that PIM alleges to have committed the injury or offense.

¶ 44    Examining the underlying complaint in its entirety, we find that it does not leave open the possibility that the claimed violations or injuries stemmed from the conduct of Ferrara Pan, the entity that existed during the time the policies were in effect. Unlike *Illinois Tool Works*, where certain complaints did not include specific allegations regarding Illinois Tool's role or the time of the exposure, but simply grouped Illinois Tool with all other defendants as a proximate cause of the injury or exposure, there is no such grouping here. *Id.* ¶ 25. Rather, PIM makes a clear distinction between the Ferrara Candy and Ferrara Pan entities throughout its complaint. Defendants disagree and point to paragraphs 79 and 80 of the complaint's "Facts" section to support their contention that the violations or injuries asserted by PIM possibly stemmed from Ferrara Pan's conduct. Defendants argue that PIM's allegations regarding trade dress infringement in paragraph 79 of the complaint include assertions of misconduct by "Ferrara" generally without any distinction between the predecessor and successor. Similarly, in paragraph 80, defendants point out that PIM alleges "Ferrara Candy was, of course aware of PIM's Trade Dress, having manufactured [Sour Jacks] for PIM for so many years." According to defendants, the reference to "Ferrara Candy" in paragraph 80 includes Ferrara Pan, since it was Ferrara Pan that "had historically manufactured Sour Jacks." Defendants further argue that PIM sued Ferrara Candy as "the successor-in-interest to Ferrara Pan Candy Co." and "current operating company responsible for the acts complained of herein." Defendants read this section of the complaint, which defines the "Parties," to mean that PIM's allegations against Ferrara Candy encompass any possible infringement committed by its predecessor, Ferrara Pan during the policy periods.

¶ 45    However, these individual allegations cannot be read in isolation, and instead, must be read in the context of the entire complaint. Immediately preceding paragraph 79, PIM's complaint attributes the trade dress infringement to Ferrara Candy, not Ferrara Pan or even Ferrara. Specifically, PIM alleges that "Ferrara Candy's 'Sour Buddies' product uses a shape *** that closely simulates and infringes PIM's Trade Dress for Sour Jacks." Additionally, we note that PIM makes a clear distinction between the Ferrara entities throughout its complaint.

¶ 46    We first observe the distinction between the entities in the "Nature of the Action" section of the complaint, where PIM states that both "[d]efendants and their predecessors-in-interest," received "proprietary formulas in confidence." Thus, the complaint makes a clear distinction between the defendants and their predecessor-in-interest, Ferrara Pan. PIM then immediately states that "[d]efendants not only understood their obligation to guard the secrecy of PIM's confidential information, but entered into a confidentiality agreement" and that PIM "recently discovered that [d]efendants have misappropriated PIM's secret formulas" and that "[d]efendants' unlawful sour candy copies PIM's *** trademark and trade dress." These statements, in conjunction with the distinction made between the defendants and their predecessor-in-interest indicate that PIM is not referring to the acts of Ferrara Pan.

¶ 47    Further distinctions between the entities and their roles can be seen in the Facts section. For instance, PIM clearly states that "Ferrara Pan was the sole manufacturer" of PIM's products for a number of years. PIM then states that "Ferrara Pan and its successor-in-interest Ferrara Candy continued as major suppliers" of products until 2014. With respect to each asserted claim, PIM alleges that the violations stem from the conduct of Ferrara Candy, the post-merger entity. Relevant to this appeal, PIM alleges by reincorporating previous allegations in the complaint, that it was "Ferrara Candy's activities" including "its use and

marketing of the Infringing Sour Buddies' Trade Dress" that constitute infringement under the Lanham Act. Read in its entirety, the complaint makes clear that it is alleging infringement by Ferrara Candy.

¶ 48     Having found that none of the allegations in the second amended complaint occurred during the policy period, we find that there is no coverage under the policies. Therefore, plaintiffs had no duty to defend or indemnify defendants. See *Sentry Insurance v. Continental Casualty Company*, 2017 IL App (1st) 161785, ¶ 39 (providing that the court may simultaneously find the insurer has no duty to indemnify based on its determination that there is no duty to defend). Accordingly, we need not address whether the "knowing violation" exclusion of the policies applies or whether the second amended complaint alleges a "personal advertising injury" as covered by the policies.

¶ 49                              D. Right to Recoup Defense Costs

¶ 50     Defendants argue that even if Liberty Mutual prevails on the duty to defend issue, it does not have the right to recoup any of the defense expenses it paid on behalf of Ferrara Candy. Defendants acknowledge that the CGL Policies contain a Defense Costs endorsement, which provides the right to reimbursement of defense costs. However, defendants contend that the right to reimbursement is limited. Specifically, defendants claim the terms of the endorsement clearly state that Liberty Mutual must first advise Ferrara Candy that there is no coverage under its policies in order to preserve the right to reimbursement of defense costs. Because Liberty Mutual initially provided a defense and did not withdraw until March 31, 2017, defendants argue that Liberty Mutual cannot be reimbursed for defense costs incurred prior to its 2017 withdrawal. As such, the issue before us is whether Liberty Mutual's June 2, 2015 letter provided notice that there might not be coverage.

¶ 51    Our Supreme Court has held that an insurer that defends under a reservation of rights cannot later recoup defense costs paid even when it is later determined that the underlying claim is not covered by the policy, unless a provision allowing for the recovery of defense costs is contained in the insurance policy. See *Midwest Sporting Goods Co.*, 215 Ill. 2d at 166. Here, the CGL Policies contain an "Illinois Changes- Defense Costs" endorsement which provides, in pertinent part, as follows:

> If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s), is (are) not covered under this this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and to seek reimbursement for defense costs.

¶ 52    The endorsement expressly allows Liberty Mutual the right to reimbursement for the defense cost if it is later determined that the claims are not covered under the policies. However, as defendants point out, the right to reimbursement only applies to defenses costs that have been incurred after Liberty Mutual has provided written notice to the named insured. The written notice must state that there may not be coverage and that Liberty Mutual is reserving its right to terminate the defense and seek reimbursement for defense costs.

¶ 53    In its June 2, 2015 letter to defendants, Liberty Mutual stated that it would provide coverage for the underlying suit to Ferrara Candy, subject to certain reservation of rights. Among these reserved rights include (1) the right to withdraw from the defense of Ferrara Candy in the event that it is determined that there was no obligation to defend Ferrara Candy in the lawsuit; and (2) the right to seek reimbursement from the insureds for indemnity payment and defense costs. Consistent with the terms of the endorsement, the June 2, 2015

letter provided written notice that Liberty Mutual was reserving its right to terminate the defense and seek reimbursement for defense costs.

¶ 54    With respect to notice of non-coverage, defendants acknowledge that the June 2015 letter provided that indemnification may not be available for the relief sought in the lawsuit but argue that "Liberty did not notify Ferrara Candy that, as of June 2015, there may not be defense coverage for PIM's complaint." However, the letter lists "grounds under which some or all aspects of the Lawsuit may not be covered under the Policies," thus, providing notice to Ferrara Candy that there "may not be coverage" as required under the endorsement.

¶ 55    Accordingly, Liberty Mutual is entitled to reimbursement of its defense costs in the underlying suit.

¶ 56                                III. CONCLUSION

¶ 57    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 58    Affirmed.